# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

PATRICIA ANN CABRERA,

           **Plaintiff,**

v.                                    **Case No:  6:11-cv-1811-Orl-22GJK**

COMMISSIONER OF SOCIAL
SECURITY,

           **Defendant.**

_____

# REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT:**

Patricia Ann Cabrera (hereafter "Claimant"), appeals to the District Court from a final decision of the Commissioner of Social Security (hereafter "Commissioner") denying her applications for disability benefits and supplemental security income (hereafter "Application"), which alleged a disability onset date of April 10, 2002.  Doc. No. 1.  For the reasons set forth below, it is **RECOMMENDED** that the Commissioner's decision be **AFFIRMED**.

## I.    MEDICAL AND OPINION EVIDENCE

On September 11, 2000, while working as a manager at Bed, Bath and Beyond, Claimant injured her back while swatting at wasps.  R. 298, 322.  Claimant treated at CentraCare and later at Jewett Orthopaedic Clinic with Michael MacMillan, M.D.  R. 296-98, 322.  Dr. MacMillan diagnosed Claimant with lumbar radiculopathy.  R. 297.  In April 2002, Claimant reinjured her back after moving tables at work.  R. 277-78, 295.  On April 14, 2002, Claimant went to the Orlando Regional Emergency Department complaining of back pain.  R. 277-78.  Claimant later received treatment at CentraCare and reported that she might be incontinent.  R. 324, 329.  From

May to October 16, 2002, Claimant treated at Jewett Orthopaedic Clinic, complaining of back and left leg pain.  R. 284-85, 292-95.  After reviewing Claimant's MRIs, EMG and lumbar myelogram, Dr. MacMillan found no evidence of compressive lesions that accounted for Claimant's complaints of pain.  R. 292.  On April 16, 2003, Dr. MacMillan noted that there was no spinal cause for Claimant's pain and recommended she see a neurologist.  R. 291.

On June 5, 2003, Jay Wright, M.D., conducted a consultative physical examination.  R. 391-93.  Dr. Wright diagnosed Claimant with "L5-S1 degenerative disc changes with small central L5-S1 disc protrusion status post likely L5-S1 internal disc derangement."  R. 393.  Dr. Wright opined that Claimant could return to work with the following restrictions:  no lifting greater than fifteen pounds, prolonged standing, prolonged sitting, repetitive bending or lifting.  R. 393.

Beginning June 2003, Claimant treated with Stephen R. Goll, M.D., at Orlando Orthopaedic Center.  R. 344-77.  Dr. Goll's preoperative treatment notes, from June 9 to December 15, 2003, indicate that Claimant complained of back and leg pain.  R. 344, 353, 355-56.  During the initial consultation, Claimant denied bladder control problems.  R. 344.  Dr. Goll never diagnosed Claimant with a bladder control problem, although his notes do reflect that Claimant related "a history of urinary urgency and incontinence."  R. 357.  After the initial consultation, Dr. Goll indicated that Claimant could perform light duty work "with no lifting greater than 15-20 pounds and no repetitive bending."  R. 352.  Subsequently, Dr. Goll indicated that Claimant was restricted to light duty work, no lifting greater than twenty-five pounds and only occasional bending, twisting, squatting, stooping and climbing.  R. 354, 356, 359.

On December 19, 2003, Dr. Goll performed an L5-S1 disc excision with instrumented interbody fusion.  R. 362.  Three months post-surgery, Claimant still complained of back pain

and leg discomfort.  R. 370.  In June and August 2004, Claimant complained of back discomfort, pain in her right leg and numbness in her toes.  R. 374, 376.  Dr. Goll indicated that Claimant could return to light duty work with the following restrictions:  no lifting more than ten pounds; limited to working four hours per day, five days per week; no prolonged sitting or standing for more than fifteen to twenty minutes without the opportunity to move and change positions; and occasional bending, twisting, squatting, stooping and climbing.  R. 375.  On December 2, 2004, Dr. Goll indicated that Claimant had reached maximum medical improvement and had a twelve percent impairment rating.  R. 495.

On April 27, 2005, Joy Abraham, M.D. conducted a consultative mental examination to evaluate Claimant's mental condition.  R. 394.  Dr. Abraham reviewed Claimant's medical records and conducted a verbal examination. R. 394-95.  Dr. Abraham concluded that Claimant does not have a psychiatric disorder that is causally related to her back injuries and has "no psychiatric restrictions to work full-time."  R. 398.

On January 25, 2005, Claimant was referred to Marc R. Gerber, M.D., for treatment of her chronic low back pain.  R. 622.  Dr. Gerber indicated that Claimant suffered from chronic low back pain with radicular symptoms, although there was no "obvious objective radiculopathy."  R. 620.  Dr. Gerber also indicated that Claimant would likely experience ongoing myofascial pain.  R. 620.  Dr. Gerber opined that Claimant could perform light duty work that involved lifting no more than ten to fifteen pounds and avoiding bending, prolonged walking or standing.  R. 619-20.  Dr. Gerber also opined Claimant's return to the workplace would be "beneficial from both a physical and psychological standpoint."  R. 619.

On June 30, 2005, Claimant began treating with Michael Creamer, D.O.  R. 400.  Dr. Creamer noted that Claimant reported occasional incontinence, but he did not find any bowel or

bladder deficits.  R. 400.  Dr. Creamer's impression was that Claimant was suffering from "low back and right lower extremity pain related to chronic lumbar radiculopathy."  R. 402.  Dr. Creamer recommended Claimant undergo urodynamic studies and a spinal cord stimulator trial. R. 402.  The results of Claimant's urodynamic report indicated neurogenic bowel and bladder. R. 406.  On March 14, 2006, the spinal cord stimulator trial was removed because Claimant reported it made her pain worse.  R. 422.

On May 25, 2006, Dr. Creamer opined that Claimant can occasionally lift no more than fifteen pounds.  R. 528.  Dr. Creamer opined that Claimant can only perform sitting work and needs to be allowed to move from sitting to standing as needed.  R. 528.  Dr. Creamer opined that Claimant can only occasionally bend, squat and stoop, and cannot operate heavy machinery or use foot controls.  Doc. No. 528.  On November 27, 2007, Dr. Creamer reiterated these same restrictions and further opined that Claimant cannot lift objects from floor level.  R. 530-31.

On March 6, 2008, Michael J. Broom, M.D., evaluated Claimant.  R. 617.  Claimant reported constant back pain, occasional toe numbness, headaches, neck pain, arm pain, shoulder pain and buttock pain.  R. 617.  Claimant reported that bending, lifting, twisting, sneezing and sitting for too long increased her discomfort.  R. 616.  Claimant indicated that her medications, rest and lying down with her feet elevated helped.  R. 616.  Claimant also reported frequent urination and constipation.  R. 616.  Dr. Broom indicated that Claimant should continue with her conservative pain management and agreed with Dr. Goll's twelve percent permanent impairment rating.  R. 615.  Dr. Broom opined that Claimant "will likely remain restricted from activities involving frequent bending, twisting, squatting, stooping and lifting over 15 pounds."  R. 615. Dr. Broom opined that Claimant will need breaks from prolonged standing and walking, and "[h]er level of function would be essentially sedentary."  R. 615.

On May 21, 2008, William W. Austin, Psy.D., conducted a consultative mental status examination. R. 665-67. Dr. Austin opined that Claimant can manage her own funds, is moderately limited in social functioning and is moderately limited in functional ability due to chronic pain and restrictions on lifting more than five to ten pounds. R. 666. Dr. Austin diagnosed Claimant with adjustment disorder with mixed anxiety and depressed mood. R. 666.

On May 30, 2008 and December 9, 2008, Jane McDuffie, M.D., and Loc Kim Le, M.D., non-examining doctors, completed physical residual functional capacity assessments. R. 669-75, 705-12. Drs. McDuffie and Le opined that Claimant can lift and/or carry twenty pounds occasionally and ten pounds frequently. R. 670, 706. Drs. McDuffie and Le opined that Claimant can stand, walk and/or sit six hours in an eight-hour workday, and is able to push and/or pull within the lifting and carrying restrictions previously noted. R. 670, 706. Dr. McDuffie opined that Claimant can occasionally stoop and crouch. R. 671. Dr. Le opined that Claimant can occasionally stoop, kneel, crouch and crawl. R. 707. Both doctors opined that Claimant has no manipulative, visual, communicative or environmental limitations. R. 672-73, 708-09.

On May 30, 2008 and December 3, 2008, Maryann Wharry, Psy.D., and Leif Davis, Psy.D., non-examining doctors, completed psychiatric review techniques. R. 677-89, 691-703. Dr. Wharry diagnosed Claimant with adjustment disorder with mixed anxiety and depressed mood. R. 680. Dr. Davis diagnosed Claimant with adjustment disorder with depression and anxiety. R. 694, 696. Drs. Wharry and Davis both opined that Claimant has a mild restriction performing activities of daily living, mild difficulties maintaining social functioning, concentration, persistence or pace and no episodes of decompensation of extended duration. R. 687, 701.

## II.   <u>ADMINISTRATIVE PROCEEDINGS</u>

On April 24, 2008, Claimant filed her Application.  R. 133-40.  The Application was denied initially and on reconsideration.  R. 64-67.  Claimant requested a hearing before an Administrative Law Judge (hereafter "ALJ").  R. 82-83.  On July 16, 2010, Claimant and a vocational expert testified at the hearing.  R. 36-62.

Claimant's testimony, as set forth below, reveals that she was born in 1965, has a GED and lives with her three adult children.  R. 38.[1]  Claimant last worked for two months in 2007, as a receptionist for Culinary Classics.  R. 39-40.  Claimant stated she was let go because she was unable to fulfill the job duties.  R. 39.  Claimant stated that the job's sitting and walking caused extreme pain in her lower back and extremities, as well as swelling in her legs after sitting for too long.  R. 40.  Although the job provided a sit/stand option, Claimant indicated she was unable to do the work because her body sometimes shuts down and she needs to lay down to take the pressure off of her back.  R. 45-46.  Claimant attended school in 2005, but had problems with pain, focusing and going to the different classrooms.  R. 40-41.  Claimant testified that it took her eighteen months, instead of the normal year, to obtain the administrative certificate because she had to miss classes or leave early due to sickness, being unable to focus and being unable to function.  R. 40, 45.

Claimant testified that Dr. Goll performed surgery on her in 2003.  R. 42.  Claimant sees Dr. Kramer for pain management and he has told her to continue with her strengthening and pain management because she is at maximum improvement.  R. 42.  Claimant testified that she recently started physical therapy and treats with a TENS unit and stretching exercises.  R. 42.[2]

---

[1]  GED stands for general equivalency diploma.

[2]  TENS stands for transcutaneous electrical nerve stimulation.

Claimant's typical day involves taking her children to work, eating breakfast, showering, treating with her TENS unit, then laying down and propping her legs up.  R. 43.  Claimant then rests or naps, takes her medication and tries to do little things around the house until she picks up her children.  R. 43.  Claimant cooks three times per week, grocery shops with her children and will leave the house everyday depending on how her body feels.  R. 43-44.  Claimant can walk for up to twenty minutes but leans on her kids or a cart when at the grocery store.  R. 44.  Claimant stated she has to lay down five to six times a day to relieve the pressure on her back.  R. 46.  Claimant testified that she experiences extreme pain going through her legs that sometimes causes her legs to buckle.  R. 46.

After her surgery, Claimant was treated with a spinal cord stimulator that was subsequently discontinued because it did not work and caused more problems.  R. 46.  In the past, Claimant has received epidurals but they have only provided brief relief.  R. 46-47.  Claimant refused treating with a morphine pump because she does not want to undergo additonal surgery.  R. 47.  Claimant currently uses Lidoderm patches and is in physical therapy.  R. 47.  Claimant also takes VESIcare for bladder control because she has been unable to control her bladder since injuring her back.  R. 47-48.  Although the medication helps her bladder control, she still needs to urinate every 14 to 20 minutes.  R. 48.  Claimant also takes Rozerem to help her sleep, but it does not help much.  R. 49.  Claimant's medications cause blurry vision, daily headaches and an inability to focus.  R. 47-49.  Claimant suffers from migraine headaches two or three times per month.  R. 49.  Claimant stated that on her bad days, which can occur up to three to five times per week, she is propped up in bed because her body is swollen and in pain.  R. 50.

The vocational expert classified Claimant's past work as administrative assistant, stocker, home health care provider, paraprofessional aide, assistant retail manager and retail manager.  R.

54-55.  The ALJ asked the vocational expert whether a person with the same age, education and work background could perform Claimant's past work, assuming the following limitations:  a range of sedentary work; occasional bending, squatting, stooping and kneeling; no crawling, climbing ladders, ropes or scaffolds; a job that permits standing every hour for five minutes while on task; no lifting from floor level or using foot controls; no use of dangerous machinery, exposure to unprotected heights or excessive vibration.  R. 56.  The vocational expert testified that such a person could not perform Claimant's past work.  R. 56-57.  The vocational expert testified that such a person could work as a food and beverage order clerk, charge account clerk or information clerk.  R. 57.  The vocational expert testified that such a person could still perform this work if a cane was needed for walking, walking was limited to no more than twenty minutes and the person needed to alternate between sitting and standing at will.  R. 58.

The vocational expert indicated that a person who was limited to light work, lifting less than ten pounds, occasional bending, squatting, twisting, stooping and climbing, no standing or sitting for more than fifteen minutes at a time and who could only work four hours per day could not perform the jobs he identified.  R. 60.  The vocational expert stated that a person who needed to take three to five unscheduled breaks to lie down also could not perform these jobs.  R. 60.  The vocational expert testified that a person who needed to miss one day per week from work, on average, would not be able to sustain employment.  R. 61.

On September 17, 2010, the ALJ issued his decision.  R. 12-27.  The ALJ found that Claimant has not engaged in substantial gainful activity since April 10, 2002.  R. 14.  The ALJ found that Claimant suffers from the severe impairments of degenerative disc disease in her lumbar spine, status post fusion surgery and myofascial pain.  R. 15.  The ALJ found that Claimant's depression is not severe because it "does not cause more than minimal limitation" in

her ability to perform basic mental work activities.  R. 15.  In making this finding, the ALJ determined that Claimant has a mild restriction in activities of daily living, had no episodes of decompensation of extended duration and mild difficulty maintaining social function, concentration, persistence or pace.  R. 15.  The ALJ found that Claimant's impairments or combination of impairments do not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  R. 16.

The ALJ found that Claimant has the residual function capacity (hereafter "RFC") to perform sedentary work that permits alternating between sitting and standing at will; occasionally climbing stairs, stooping, kneeling or crouching; no lifting from floor level; no crawling; no climbing ladders, ropes or scaffolds; and avoiding exposure to excessive vibration, dangerous moving machinery or unprotected heights.  R. 17.  In making this finding, the ALJ gave "probative weight" to Drs. Creamer and Broom's opinions that Claimant could occasionally bend, twist, squat and stoop; could lift less than fifteen pounds; and needed breaks from prolonged standing and walking.  R. 24.  However, the ALJ found there was no medical evidence supporting Dr. Creamer's restriction to sitting work and it conflicted with Claimant's testimony concerning her activities of daily living, completing vocational rehabilitation training and her work as a receptionist.  R. 24.  The ALJ gave little weight to Dr. Goll's opinion limiting Claimant to part time work because it was inconsistent with the medical evidence and the other medical opinions.  R. 24.

The ALJ also made a finding regarding Claimant's credibility.  The ALJ found the medical evidence supported Claimant's "persistent complaints of significant back and lower extremity pain and difficulty walking."  R. 23.  However, the ALJ found that Claimant's "statements concerning the intensity, persistence and limiting effects" of her symptoms were not

credible to the extent they were inconsistent with his RFC finding.  R. 18.  In making this finding, the ALJ summarized and cited the medical evidence from 2000 to 2009.  R. 23.  In summary, the ALJ acknowledged Claimant's continued complaints of pain after her 2003 fusion surgery on her back, but noted that there were no subsequent findings of radiculopathy or neurologic deficit.  R. 23.  The ALJ also noted reports that Claimant had difficulty walking, but pointed out that her physical examinations always showed she had full muscle strength, normal gait and normal neurological examinations.  R. 23.  The ALJ also pointed out Dr. Broom's findings regarding Claimant's functional capacity and his opinion in 2005, that Claimant should return to work as soon as possible.  R. 23.

In light of his RFC finding and the vocational expert's testimony, the ALJ found that Claimant cannot perform her past relevant work.  R. 25.  The ALJ did, however, find that Claimant can work as a food and beverage clerk, charge account clerk or information clerk.  R. 26.  As a result, the ALJ found Claimant is not disabled.  R. 27.

## III.   <u>ISSUES</u>

Claimant raises three issues on appeal.  First, Claimant argues that the ALJ erred by failing to find she has a severe bladder impairment, failing to account for this severe impairment in her RFC finding and failing to include limitations from this severe impairment in the hypothetical posed to the vocational expert.  Doc. No. 16 at 12-15.  Second, Claimant argues that the ALJ failed to properly evaluate her credibility.  Doc. No. 16 at 16-18.   Third, Claimant argues that the ALJ failed to account for all of her impairments in the hypothetical posed to the vocational expert.  Doc. No. 16 at 18-20.  Claimant requests the Commissioner's decision be reversed and remanded for further proceedings.  Doc. No. 16 at 20-21.

IV.   **LEGAL STANDARDS**

    **A. ALJ'S FIVE-STEP DISABILITY ANALYSIS**

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a).  In *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001), the Eleventh Circuit explained the five-step sequential evaluation process as follows:

> In order to receive disability benefits, the claimant must prove at step one that he is not undertaking substantial gainful activity. At step two, the claimant must prove that he is suffering from a severe impairment or combination of impairments. At step three, if the claimant proves that his impairment meets one of the listed impairments found in Appendix 1, he will be considered disabled without consideration of age, education, and work experience. If the claimant cannot prove the existence of a listed impairment, he must prove at step four that his impairment prevents him from performing his past relevant work. At the fifth step, the regulations direct the Commissioner to consider the claimant's residual functional capacity, age, education, and past work experience to determine whether the claimant can perform other work besides his past relevant work.

*Id.* (citations omitted). The steps are followed in order.  If it is determined that the claimant is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

    **B. STANDARD OF REVIEW**

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838

(11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards*, 937 F.2d at 584 n.3; *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The District Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen*, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied). The District Court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004).

## V.   **ANALYSIS**

### A.   **ALJ's Failure to Find Severe Bladder Impairment**

Claimant's first argument is three pronged and challenges the ALJ's failure to find or address her bladder impairment. First, Claimant argues that the ALJ did not consider or mention her bladder impairment at step two, despite medical records indicating incontinence and her testimony that "she <u>used to</u> urinate on herself" and still must urinate every 15 to 20 minutes despite her medication. Doc. No. 16 at 12-13 (emphasis added). Second, Claimant argues that the ALJ neither included, nor indicated that she considered Claimant's bladder impairment in her RFC assessment. Doc. No. 16 at 14. Third, Claimant argues that the ALJ did not include her

bladder impairment in the hypothetical question posed to the vocational expert.  Doc. No. 16 at 15.

Claimant does not point to, and the record is devoid of, any diagnosis by any treating, consulting or non-examining doctor of incontinence.   Neither Claimant's Application, nor Claimant's adult function reports list incontinence as a severe impairment.  Claimant testified that she takes VESIcare for bladder control and that her bladder caused a problem at work because "I couldn't always leave my, my seat all the time."  R. 48.  However, Claimant never testified that her difficulty with bladder control prevented her from working or attending school. In fact, Claimant testified that the problems she experienced working as a receptionist were extreme pain and swelling in her legs.  R. 40.  Claimant testified that attending school was hard because she experienced a lot of pain and an inability to focus.  R. 41.  Thus, Claimant never testified that bladder control or incontinence is a severe impairment.  The ALJ is not required to investigate an impairment that is neither alleged in a claimant's application, nor testified to at the hearing.  *See Street v. Barnhart*, 133 F. Appx. 621, 627 (11th Cir. 2005) (quoting *Pena v. Chater*, 76 F.3d 906, 909 (8th Cir. 1995)).

Assuming arguendo that the ALJ erred in not finding Claimant's incontinence to be a severe impairment, the error was harmless.  In *Heatly v. Commissioner of Social Security*, 382 F. Appx. 823, 824-25 (11th Cir. 2010), the Eleventh Circuit stated that "[e]ven if the ALJ erred in not indicating whether chronic pain syndrome was a severe impairment, the error was harmless because the ALJ concluded that Healthy had a severe impairment:  and that finding is all that step two requires."  The Eleventh Circuit further indicated that "[n]othing requires that the ALJ must identify . . . all of the impairments that should be considered severe.  Instead, at step three, the ALJ is required to demonstrate that it has considered all of the claimant's impairments,

whether severe or not, in combination." *Id.* at 825. Thus, as long as the ALJ finds the claimant has a severe impairment and considers all the claimant's severe and non-severe impairments at step three, any error in finding a particular impairment not severe is harmless. *Id.*; *see also Delia v. Comm'r of Soc. Sec.*, 433 F. Appx. 885, 887 (11th Cir. 2011) (ALJ's failure to find an impairment severe at step two is harmless error if the ALJ fully considers the consequences of a claimant's impairments at the later stages of the sequential analysis).

In the case at bar, the ALJ found Claimant suffered from the severe impairments of degenerative disc disease of the lumbar spine, status post fusion surgery and myofascial pain. R. 15. The ALJ stated that she "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence . . ." when making her RFC determination. R. 17. The ALJ also expressly noted Claimant's reports of incontinence and the results of the urodynamic study which "was abnormal indicating neurogenic bowel and bladder." R. 21 (internal citation omitted). Assuming arguendo that the ALJ erred in failing to find Claimant's incontinence to be a severe impairment, the error was harmless because it is clear that the ALJ considered her incontinence in determining Claimant's RFC. *See Heatly*, 382 F. Appx. at 824-25, and *Delia*, 433 F. Appx. at 887. Furthermore, the ALJ was not required to include limitations from Claimant's bladder impairment in the hypothetical posed to the vocational expert because the ALJ did not find this impairment to be severe. An ALJ is not required to include findings that he rejects or impairments that are not supported by substantial evidence in the hypotheticals posed to a vocational expert. *See Wright v. Comm'r of Soc. Sec*, 327 F. Appx. 135, 137 (11th Cir. 2009). Accordingly, it is **RECOMMENDED** that the Court reject Claimant's first issue on appeal.

**B.  ALJ's Credibility Determination**

Claimant contends the ALJ summarily found she was not credible because "'the degree of limitation alleged is not consistent with the record.'"  Doc. No. 16 at 17.  Claimant asserts the ALJ failed to consider the entire record and specifically failed to "mention" her bladder impairment, persistent low back pain, radiculopathy, recommendations not to work from January to June 2004, reported pain levels and other evidence that the pain was interfering with her functioning.  Doc. No. 16 at 17-18.

In regard to Claimant's credibility, the ALJ stated:

> In summary, the undersigned has carefully considered the claimant's allegations and the claimant's medical history is significant for persistent complaints of significant back and lower extremity pain and difficulty walking.  However, the degree of limitation alleged is not consistent with the record.  In September 2000, the claimant was treated for a work injury, but was able to return to work until April 2002.  The claimant reported ongoing radicular symptoms, but there was no persistent significant neurologic deficit on examination, imaging was interpreted as negative for spinal origin of the claimant's symptoms and electrodiagnostic studies were normal.  In an attempt to relieve the claimant's symptoms; fusion surgery at L5-S1 was eventually performed in December 2003.  Postoperatively, symptoms continued, but subsequent imaging reports did not demonstrate recurrent disc herniation and Dr. Gerber found no objective radiculopathy on examination.  In August 2004, treating physician Dr. Goll, restricted the claimant to lifting no more than 10 pounds; occasional bending, twisting, squatting, stooping, and climbing; and no prolonged standing or sitting more than 15-20 minutes at a time.  In addition, the claimant was restricted to working only 4 hours a day, 5 days a week.  However, a November 2004 functional capacity evaluation indicated a limited light exertional level was appropriate with occasional standing and/or walking, primarily sitting.  In January 2005, a medical source statement from treating physician Dr. Broom noted myofascial pain, but no obvious radiculopathy; Dr. Broom concludes that the claimant was at maximum medical improvement for light duty.  Dr. Broom restricted the claimant to lifting 10 to 15 pounds with no prolonged walking or standing.  Dr. Broom felt it was appropriate for the claimant to return to work as soon as possible.  In 2005, Dr.

Creamer's treatment records document ongoing complaints of neck and right upper extremity pain, but neurological examination were normal as well as gait.  Subsequently, the claimant failed a spinal cord stimulator trial, but successfully completed a vocational rehabilitation course as a administrative assistant in June 2006.  In 2007, treatment notes show the claimant was walking with a cane, but on physical examination muscle strength was repeatedly assessed at 5/5.  In March 2007, the claimant secured a position with Culinary Classics, as an Administrative but was terminated in June 2007, as she could not keep up with the company pace due to back pain and bilateral leg pain with swelling.  In a November 2007 medical source statement, Dr. Creamer assessed similar sedentary restrictions as previously with occasional limitations in postural activities and with need for the option to sit or stand.  In 2008, treatment records reflect ongoing low back pain and lower extremity symptoms; a March 2008 MRI scan showed post op epidural fibrosis at L5-S1, but no evidence of neurocompression and no reference to arachnoiditis.  A reevaluation by Dr. Broom in 2008 notes physical findings of some degree of sensory deficits to the right toes and weakness of the extensor halluci longus, but the claimant's gait was normal without spasm.  Dr. Broom advised no further surgery and concurred with the previous restrictions from activities involving frequent bending, twisting, squatting, stooping and lifting over 15 pounds, with breaks from episodes of prolonged standing and walking.  The 2009 treatment records again document continued difficulty walking by findings on physical examination show 5/5 muscle strength throughout and was able to walk on level surface without the use of an assistive device and no report of ongoing significant neurological deficit.

R. 23.  Thus, the ALJ reviewed the medical record and found Claimant's allegations regarding the limitations she experienced were not credible because there was no spinal cause for Claimant's symptoms, no objective radiculopathy, doctors indicated she could work despite her symptoms, Claimant's muscle strength was 5/5, Claimant had a normal gait and there were no indications of neurological deficit.

Claimant cites no authority to support her assertion that the failure to "mention" every piece of evidence in the medical record invalidates the ALJ's credibility determination.  In fact, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his

decision, so long as the ALJ's decision . . . is not a broad rejection," in which case the Court cannot conclude the ALJ considered the claimant's medical condition as a whole.  *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005).  In this case, the ALJ extensively and exhaustively identified the specific medical evidence she relied on in determining that the limitations Claimant alleged were not credible.  The ALJ's reasons clearly indicate that she considered Claimant's medical condition as a whole.  The ALJ's failure to "mention" the evidence identified by Claimant was not error.  Accordingly, it is **RECOMMENDED** that the Court reject Claimant's second issue on appeal.

### C.  ALJ's Hypothetical to the Vocational Expert

Claimant argues that the hypothetical posed to the vocational expert was incomplete because the ALJ failed to include her bladder impairment, any mental limitations or account for her "mild limitations in social functioning, daily activities, and concentration, persistence or pace."  Doc. No. 16 at 19.  As set forth above, the ALJ was not required to include any impairments from a bladder impairment because the ALJ did not find the impairment to be severe.  The ALJ was likewise not required to include any mental limitations in the hypothetical because the ALJ did not find that Claimant suffered from a severe mental impairment.  *See* R. 15.  The ALJ is not required to include non-severe impairments in the hypothetical question to the ALJ.  *See Berry v. Astrue*, No. 3:09-cv-885-J-TEM, 2011 WL 1135091 at *5 (M.D. Fla. Mar. 28, 2011).

When evaluating a claim of disability based on a mental impairment, the Commissioner follows the special procedure set forth in 20 C.F.R. § 404.1520a.  This special procedure requires the Commissioner to determine whether a claimant has a medically determinable mental impairment and then rate the degree of functional limitation resulting from the mental

impairment.  20 C.F.R. § 404.1520a(b).  The degree of functional limitation is rated in four functional areas:  activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation.  20 C.F.R. § 404.1520a(c)(3).  The first three functional areas are rated on a none, mild, moderate, marked or extreme scale.  The fourth functional area is rated on a none, one to two, three, four or more scale.  20 C.F.R. § 404.1520a(c)(4).  If the degree of limitation in the "first three functional areas [is rated] as 'none' or 'mild' and 'none' in the fourth area, [the Commissioner] will generally conclude that your impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities."  20 C.F.R. § 404.1520a(d)(1).

The ALJ found that Claimant suffers from the non-severe impairment of depression and rated the degree of limitation in the first three functional areas to be mild.  R. 15.  Consequently, the ALJ found that Claimant's depression caused no more than a minimal limitation in her ability to do basic work activities.  When the ALJ finds a claimant's mental impairment to be non-severe, the ALJ does not err in omitting any resulting limitations from the hypothetical posed to the vocational expert.  *See Baxter v. Barnhart*, 165 F. Appx. 802, 804 n.2 (11th Cir. 2006) ("Because the ALJ properly determined that Baxter's antisocial personality disorder was not severe, the ALJ properly omitted limitations resulting from this disorder in the hypothetical to the VE.").[3]  Therefore, it is **RECOMMENDED** that the Court reject Claimant's third issue on appeal.

## VI.   CONCLUSION

For the reasons stated above, it is **RECOMMENDED** that:

1.      The final decision of the Commissioner be **AFFIRMED**; and

---

[3] Claimant does not assert that the ALJ erred in determining that her depression is a non-severe impairment or point to any evidence that indicates this non-severe impairment imposes anything more than a minimal limitation on her ability to perform basic work activities.

2.      The Clerk be directed to enter judgment in favor of the Commissioner and close

the case.

Failure to file written objections to the proposed findings and recommendations

contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved

party from attacking the factual findings on appeal.

**RECOMMENDED** in Orlando, Florida on December 18, 2012.


                                            GREGORY J. KELLY
                                    UNITED STATES MAGISTRATE JUDGE

The Court Requests that the Clerk
Mail or Deliver Copies of this order to:

Richard A. Culbertson
Suite E
3200 Corrine Dr
Orlando, FL 32803

John F. Rudy, III
Suite 3200
400 N Tampa St
Tampa, FL 33602

Mary Ann Sloan, Regional Chief Counsel
Dennis R. Williams, Deputy Regional Chief Counsel
Jerome M. Albanese, Branch Chief
Diane C. Schulman, Assistant Regional Counsel
Office of the General Counsel, Region IV
Social Security Administration
61 Forsyth Street, S.W., Suite 20T45
Atlanta, Georgia 30303-8920

The Honorable Mary C. Montanus
Administrative Law Judge
c/o Office of Disability Adjudication and Review
Desoto Building #400
8880 Freedom Crossing
Jacksonville, FL 32256-1224